IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| RODNEY DAVIS,                                                          | No. 9:18-cv-01046-JKS |
|                          Petitioner,                                  |                       |
|                          vs.                                          | MEMORANDUM DECISION   |
| M. ROYCE, Superintendent, Green Haven Correctional Facility,[1]       |                       |
|                          Respondent.                                  |                       |

Rodney Davis, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Davis is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Green Haven Correctional Facility. Respondent has answered the Petition, and Davis has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 10, 2012, Davis was charged with second-degree murder, three counts of second-degree attempted murder, first-degree assault, two counts of second-degree criminal possession of a weapon, first-degree attempted assault, second-degree assault, and first-degree criminal use of a firearm in an indictment that alleged that he had shot three victims outside of a bar, killing one of the victims and wounding the other two. Prior to Davis's arrest, Schenectady Police Detective Edward Ritz and Lieutenant Eric Clifford interviewed Davis. The interview,

---

[1] M. Royce, Superintendent, Green Haven Correctional Facility, substituted for Michael Capra, Superintendent, Sing Sing Correctional Facility. FED. R. CIV. P. 25(c).

which was not recorded, resulted in Davis's written statement and 16 pages of Lieutenant Clifford's handwritten notes about what Davis said.

Prior to trial, the People gave notice of its intent to offer at trial Davis's written statement as well as his oral statements as memorialized in Lieutenant Clifford's written notes. Davis moved to suppress both statements, and a *Huntley*[2] hearing was held. Following the hearing, the judicial hearing officer ("JHO") recommended that Davis's motion to suppress be denied, and the trial court adopted and confirmed that decision. The People also filed a pre-trial motion pursuant to *Molineux*[3] to admit evidence of Davis's alleged gang affiliation to explain Davis's relationship with Paul Sherwood, a prosecution witness and fellow gang member who claimed that Davis confessed to shooting the victims. Following a hearing, the trial court ruled that the prosecution could introduce the evidence only "to show that there's a connection between why he would make admissions to somebody."

Davis proceeded to a jury trial on September 24, 2013. At trial, three eyewitnesses identified Davis at the person who shot the victims before and after his gun jammed. A fourth witness testified that he saw the gun jam and also saw the shooter get into a car that made a U-turn. Detective Ritz also read Davis's written statement into evidence. Defense counsel then

---

[2] *People v. Huntley*, 371 N.E.2d 794 (N.Y. 1977) (a shorthand reference to the procedure under New York law for seeking suppression of statements made to law enforcement officers).

[3] *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (setting out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for other purposes); *cf.* FED. R. EVID. 404(b) ((1)" Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

objected to the People's introduction of Davis's alleged oral statements as detailed in Detective Clifford's notes and moved to suppress the notes in their entirety. The trial court denied the motion, and the People introduced evidence of Davis's oral statements through the testimony of Lieutenant Clifford, who used the 16 pages of notes to refresh his recollection. Sherwood also testified that he was a member of the same "Sex, Money, Murder" branch of the Bloods gang of which Davis was a member and that, while housed together in Rensselaer County Jail, Davis admitted to shooting the victim. Sherwood also gave background information about Davis's role in the gang.

At the conclusion of trial, the jury found Davis guilty as charged. The trial court denied Davis's motion to set aside the verdict and imposed an aggregate term of 50 years to life imprisonment with 5 years of post-release supervision.

Through counsel, Davis appealed his conviction, arguing that the trial court erred by: 1) allowing evidence of Davis's oral statements during the police interview because the prosecution failed to provide a sufficient description of those statements when noticing their intent to introduce them; 2) admitting evidence of Davis's gang affiliation; and 3) limiting Davis's access to discovery by issuing a protective order that prohibited defense counsel from turning over discovery materials to Davis without court approval. The Appellate Division unanimously affirmed the judgment in a reasoned opinion issued on November 3, 2016. *People v. Davis*, 41 N.Y.S.3d 160, 162 (N.Y. App. Div. 2016). Davis sought leave to appeal to the New York Court of Appeals, which was summarily denied on January 23, 2017. *People v. Davis*, 74 N.E.3d 681, 681 (N.Y. 2017).

Davis then filed a *pro se* motion for a writ of error coram nobis to vacate the judgment. In that motion, Davis claimed that appellate counsel was ineffective for failing to raise on appeal an ineffective assistance of trial counsel claim based on trial counsel's failure to argue that pretrial photographic evidence is inadmissible in New York and that the trial court erred in permitting the prosecution to introduce identification evidence at trial. The Appellate Division denied coram nobis relief, and the Court of Appeals denied Davis's leave application without comment on August 17, 2018, *People v. Davis*, 109 N.E.3d 1163, 1163 (N.Y. 2018).

Davis timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on August 18, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Davis argues that: 1) his initial trial counsel rendered ineffective assistance at his *Huntley* hearing by waiving Davis's right to preclude inadmissible identification evidence; 2) substitute trial counsel also rendered ineffective assistance by failing to seek preclusion of the identification evidence, failing to object to the prosecutor's misconduct, and for calling Davis's former attorney as a witness at trial; 3) the prosecutor committed misconduct by making an inappropriate opening statement and engaging in improper bolstering and vouching of the State's witnesses; and 4) appellate counsel provided ineffective assistance for failing to raise meritorious claims on direct appeal.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A.  **Ineffective Assistance of Counsel (Grounds 1, 2, 4)**

Davis raises a number of claims alleging that various attorneys were ineffective, primarily based on his contention that in-court identifications that do not stem from pre-trial

6

lineup identifications are *per se* inadmissible. Davis raised these claims in his *pro se* motion for writ of error coram nobis, which was denied without comment.

As an initial matter, Respondent correctly notes that Davis's first two ineffective assistance claims, which challenge the performance of his initial and substitute counsel, respectively, are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should

consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

In this case, Davis raised his ineffective assistance claims by petition for a writ of error coram nobis. However, the issues cited in his ineffective assistance of trial counsel claims (Grounds 1 and 2) are all matters of record and thus, under New York law, should have been brought on direct appeal. *See, e.g.*, *Garcia v. Scully*, 907 F. Supp. 700, 706 (S.D.N.Y. 1995) (explaining the New York rule that, "[w]hen particular claimed instances of trial counsel error are matters as to which the record is already clear, . . . the claim can be reviewed by the appellate court and should be raised on direct appeal"). Davis is no longer able to return to state court to exhaust the claims because he has already completed the one appeal to which he is entitled, *Grey*, 933 F.2d at 120-21, and his record-based claims cannot now be raised in a motion to vacate, *see* New York Criminal Procedure Law ("CPL") § 440.10(2)(c).[4] The claims are thus procedurally defaulted and may be denied on that basis. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Moreover, even if Davis had fully exhausted Grounds 1 and 2, he still would not be entitled to relief on them. *See* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies). Nor is he entitled to relief on the merits of Ground 3. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's

---

[4] *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

8

performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Davis must show that his attorneys did not represent him within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for their ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d

9

584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Davis's ineffective assistance claims must fail, however, even under the more favorable New York standard. Davis first argues that his initial trial counsel, Adam Parisi, was ineffective for waiving the argument that the People were precluded from offering into evidence the eyewitness identification of three witnesses who identified Davis at trial as the shooter. But this claim is based on his flawed argument that in-court identification is inadmissible if it is not preceded by a lineup, evidence of which is also entered at trial. The record reflects that two of the witnesses who identified Davis at trial did not testify about their prior out-of-court photo

10

array identifications, and a third was permitted to testify about his prior identification only after he was unable to identify Davis in court. The admission of these identifications was proper pursuant to CPL § 60.25.[5] Davis also faults Parisi for failing to object to the admission of a photograph of Davis taken by a DJ at the bar on the night in question, which was offered to establish that Davis had been at the scene of the crime prior to its occurrence. But Davis offers no valid basis on which counsel could have challenged the picture's admission. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

Nor can Davis show that his substitute counsel Mark Gaylord was ineffective. As discussed above, his complaint that Gaylord failed to obtain suppression of the identification evidence fails as premised on a faulty legal theory. His related contention that counsel should have objected to the prosecutor's opening statement for referring to the photograph and identifications fails for the same reasons. Finally, Davis argues that Gaylord was ineffective for calling Parisi as a witness at trial. The record reflects that Parisi testified that he sent Davis discovery material and photographs while Davis was in jail. During summation, Gaylord relied on that testimony to argue that Sherwood's testimony was false and not based on Davis's admissions but rather based on the media reports of the crime and the discovery material in Davis's jail cell. Because the record reflects that Gaylord had a valid tactical reason for calling

---

[5] That section provides in relevant part that a witness may testify at a criminal proceeding that "[h]e or she observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case," or that "the person . . . whose [image] he or she observed and recognized on the second occasion is the same person whom he or she observed on the first or incriminating occasion." CPL §§ 60.25(1)(a)(i),(2).

Parisi as a trial witness, he cannot be deemed ineffective for it. Moreover, because none of the ineffective assistance of trial counsel claims have any merit, appellate counsel cannot be faulted for declining to raise them on appeal. Accordingly, Davis is not entitled to relief on any argument advanced in support of these grounds.

**B.     Prosecutorial Misconduct (Ground 3)**

Davis additionally argues that the prosecutor committed misconduct on "countless occasions" by engaging in "improper and unfair trial tactics." In support of his claim, Davis cursorily avers that the prosecutor made an improper opening statement, engaged in improper bolstering of trial identification witness testimony, and vouched for witness credibility. Davis does not, however, point to any specific statements made by the prosecutor that he finds objectionable. Allegations such as this these which are not supported by reference to the record or any document fail to meet the requirement of Habeas Corpus Rule 2(c) that a petitioner "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g.*, *Skeete v. New York*, No. 1:03–CV–2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). Moreover, an independent review of the trial transcript does not reveal that the prosecutor engaged in improper bolstering or witness vouching. Davis is thus not entitled to relief on his prosecutorial misconduct claim either.

12

## V. CONCLUSION

Davis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 18, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
